IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | |
|---|---|
| MILES LUND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SALT LAKE CITY CORPORATION, | ) |
| BRYCE CURDIE, JEREMIE | ) |
| FOREMAN, and CHRISTOPHER | ) |
| JOHNSON, | ) |
| | ) |
| Defendants. | ) |

Civil No. 2:07-CV-0226BSJ

**MEMORANDUM OPINION
& ORDER**
**(Fed. R. Civ. P. 56)**

```
┌─────────────────────────────┐
│          FILED              │
│  CLERK, U.S. DISTRICT COURT │
│   December 4, 2008 (4:12pm) │
│      DISTRICT OF UTAH       │
└─────────────────────────────┘
```

* * * * * * * * *

The plaintiff, Miles Lund, filed the instant action against the defendants under 42 U.S.C.

§ 1983 (2000) on April 6, 2007.  On March 6, 2008, the plaintiff filed a motion for partial

summary judgment (dkt. no. 30), and on July 25, 2008, the defendants filed a motion for

summary judgment (dkt. no. 41), both of which were heard on September 29, 2008.  Clark

Newhall appeared on behalf of the plaintiff; J. Wesley Robinson appeared on behalf of the

defendants.  Having read the memoranda and exhibits submitted by the parties and having heard

and considered the arguments of counsel, the court denied the plaintiff's motion for partial

summary judgment and granted the defendants's motion for summary judgment in part,

dismissing the complaint as against defendants Salt Lake City, Foreman and Johnson.  (*See*

Minute Entry, dated September 29, 2008 (dkt. no. 52).)  The court denied the defendants' motion

as to defendant Curdie and set the matter for pretrial.  (*Id.*)

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court

must "view the facts and draw reasonable inferences 'in the light most favorable to the party

opposing the [summary judgment] motion.'"  *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007)

(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). "In qualified

immunity cases, this usually means adopting . . . the plaintiff's version of the facts."  *Id.* at 1775.

"When the moving party has carried its burden under Rule 56(c), its opponent must do

more than simply show that there is some metaphysical doubt as to the material facts . . . .

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Industrial Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 586-587 (1986) (footnote omitted).   "[T]he mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).

**Plaintiff's § 1983 Claim**

Section 1983 creates a federal civil cause of action against state officials for the

"deprivation of any rights, privileges, or immunities secured by the Constitution[.]"  42 U.S.C. §

1983.  "[T]he ultimate and indispensable element of such a claim is the deprivation of a

constitutional right."  *Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006).

-2-

**"Excessive Force" and the Fourth Amendment**

As the Tenth Circuit recently explained:

> "*[A]ll* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187-88 (10th Cir.2001). The "inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to underlying intent or motivation." *Graham*, 490 U.S. at 388, 109 S.Ct. 1865.   Reasonableness is evaluated under a totality of the circumstances approach which requires that we consider the following factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  Additionally, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*  That perspective includes an "examination of the information possessed by the [officers]." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

*Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008).  The Fourth Amendment standard "requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001); *accord Fogarty v. Gallegos*, 523 F.3d 1147, 1159 (10th Cir. 2008) ("In particular, we must pay 'careful attention' to factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'") (quoting *Graham v. Connor*, 490 U.S at 396)) *see also* Annotation, *When Does Police Officer's Use of Force During Arrest Become So Excessive as to Constitute Violation of Constitutional Rights, Imposing Liability*

*under Federal Civil Rights Act of 1871 (42 U.S.C.A. § 1983)*, 60 A.L.R. Fed. 204 (1982 & Supp. 2007).

At the summary judgment stage, once we have defined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record—and if there remain no genuine issues of material fact—the *reasonableness* of the officer's actions presents "a pure question of law." *Scott*, 127 S. Ct. at 1776 n.8; *accord Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) ("Whether the officers acted reasonably, however, is a legal determination in the absence of disputed material facts. Although the reasonableness standard is inevitably fact dependent, it should not be reserved for the jury in the absence of disputed material facts."); *Mecham v. Frazier*, 500 F.3d 1200, 1203-04 (10th Cir. 2007) (same).

**Qualified Immunity**

The defendants correctly assert that qualified immunity is an affirmative defense to a Fourth Amendment excessive force claim.

The doctrine of "[q]ualified immunity is designed to protect public officials who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions, from personal liability on account of later-announced, evolving constitutional norms." *Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir. 2004). It is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial and to "ensure 'that erroneous suits do not even go to trial.'" *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (quoting *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993). Qualified immunity acts as an "immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and "the Supreme Court has repeatedly 'stressed

the importance of resolving immunity questions at the earliest possible stage in litigation.'"
*Albright*, 51 F.3d at 1534 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *see Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000).

When a defendant raises the qualified immunity defense on summary judgment, the plaintiff must first "'demonstrate that the defendant's actions violated a constitutional or statutory right.'" *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (quoting *Albright*, 51 F.3d at 1534); *see also Davis v. Scherer*, 468 U.S. 183, 197 (!984); *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995).[1]   "[A]fter identifying the constitutional right[s] allegedly violated, courts must determine whether the conduct was objectively reasonable in light of clearly established law at the time it took place." *Pierce*, 359 F.3d at 1297.   As the Supreme Court has explained, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.   On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Id.* (citation omitted); *see Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (same); *Mitchell*, 472 U.S. at 535 n.12.

---

[1] *See also Siegert v. Gilley*, 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' . . . is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.")

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or

Tenth Circuit decision on point, or the clearly established weight of authority from other courts

must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*,

960 F.2d 1493, 1498 (10th Cir. 1992).[2]   As the Supreme Court has stated:

"[P]laintiff must articulate the clearly established constitutional right and the defendant's

conduct which violated the right with specificity." *Romero*, 45 F.3d at 1475.

> Only if the plaintiff succeeds in carrying his two-part burden, does the
> burden shift to the defendant.  At that point, the defendant must show "that there
> are no genuine issues of material fact and that he or she is entitled to judgment as
> a matter of law." *Hinton*, 997 F.2d at 779.  If the court concludes Plaintiff has
> carried his burden, the court should state on the record the clearly established
> constitutional right it finds the defendant violated.  *See Losavio*, 847 F.2d at 646.

*Albright*, 51 F.3d at 1535.

"Our threshold inquiry in the qualified immunity analysis is whether, taking [Lund's]

allegations as true, [defendants] violated his Fourth Amendment right to be free from

---

[2]In this Circuit, at least,

> To assess whether the right was clearly established, we must ask if "the right [was]
> sufficiently clear that a reasonable officer would understand that what he is doing violates that right."
> *Medina*, 252 F.3d at 1128.  This inquiry "must be undertaken in light of the specific context of the
> case, not as a broad general proposition.  The relevant, dispositive inquiry in determining whether a
> right is clearly established is whether it would be clear to a reasonable officer that his conduct was
> unlawful in the situation." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (citations and
> quotations omitted).

> To survive a motion for summary judgment, the plaintiff must show the right was
> clearly established in a particularized sense. . . .  This court has held that for a right
> to be particularized, there must ordinarily be a Supreme Court or Tenth Circuit
> decision on point, or clearly established weight of authority from other courts.

*Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir.1995) (citations and quotations omitted).  While the
facts of the cases compared need not be identical, *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir.
2004), they must be sufficiently analogous to satisfy the particularized context necessary to support
liability.

*Mecham*, 500 F.3d at 1205-06.

unreasonable seizures," *Jones v. Hunt*, 410 F.3d 1221, 1225 (10th Cir. 2005), applying the Fourth Amendment's objective reasonableness standard.  *Graham*, 490 U.S.386, 395 (1989).  "In determining the reasonableness of the manner in which a seizure is effected, '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Scott*, 127 S.Ct. at 1778 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

Thus, in judging whether Officer Curdie's actions were reasonable, we must consider the risk of bodily harm that those actions posed to plaintiff Lund in light of the threat to the safety of the public that Curdie was trying to eliminate.

**ANALYSIS**

To assist the court in discerning whether a genuine issue of material fact exists, the court's local rules require that

> [t]he memorandum in support of a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which movant contends no genuine issue exists. The facts must be numbered and refer with particularity to those portions of the record on which movant relies.

DUCivR 56-1(b).  The local rules also require that

> A memorandum in opposition to a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record on which the opposing party relies and, if applicable, must state the number of the movant's fact that is disputed. All material facts of record meeting the requirements of Fed. R. Civ. P. 56 that are set forth with particularity in the statement of the movant will be deemed admitted for the purpose of summary judgment, unless specifically controverted by the statement of the opposing party identifying material facts of record meeting the requirements of Fed. R. Civ. P. 56.

DUCivR 56-1(c).

In this case, the parties' memoranda supporting and opposing both motions for summary judgment contain the statements of fact required by the local rules, and each party in turn disputes many of the fact statements in the other's supporting memoranda and sets forth a number of additional fact statements—all with citations to Rule 56(c) materials, *viz.*, pleadings, discovery and disclosure materials, including extensive deposition testimony, and affidavits in the record. (*Compare* Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, filed March 6, 2008 (dkt. no. 31) (Pltf's Mem."), at 2-6 ¶¶ 1-33, *with* Defendants' Memorandum Opposing Plaintiff's Motion for Partial Summary Judgment, filed April 14, 2008 (dkt. no. 33) ("Defs' Opp. Mem."), at 1-10; *compare* Defendants' Memorandum in Support of Motion for Summary Judgment, filed July 25, 2008 (dkt. no. 42) ("Defs' Mem."), at 2-10 ¶¶ 1-54, *with* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed August 26, 2008 (dkt. no. 46) ("Pltf's Opp. Mem."), at 2-8.) Many of plaintiff Lund's additional fact statements are disputed by the defendants' reply memorandum. (*See* Defendants' Reply Memorandum in Support of Motion for Summary Judgment, filed September 25, 2008 (dkt. no. 50) ("Defs' Reply"), at 2-8 ¶¶ 1-24.)

Sifting through these factual assertions, a few things become readily apparent: (1) Lund does not assert any specific facts in this record evidencing the use of excessive force by defendants Foreman and Johnson; and (2) Lund does not assert facts showing that when defendant Curdie's used allegedly excessive force, he acted pursuant to a policy or custom of Salt Lake City, or that the city itself has acted in a manner deliberately indifferent to the continuing, widespread, and persistent unconstitutional conduct by city officials. *See Rost ex. rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1125 (10th Cir. 2008).

-8-

The Supreme Court has long held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), but will be held liable only where "action pursuant to official municipal policy of some nature caused a constitutional tort," *id.* at 691, or where there is a continuing, widespread, and persistent pattern of official misconduct and deliberate indifference to or tacit authorization of the conduct by policy-making officials after notice of that conduct. *Rost*, 511 F.3d at 1125. Section 1983 rejects the tort principle of *respondeat superior* and does not subject municipalities to vicarious liability for the acts of their employees; "municipal taxpayers are liable only for the municipality's own misdeeds." *Milligan- Hitt v. Board of Trustees of Sheridan County School Dist. No. 2*, 523 F.3d 1219, 1223 (10th Cir. 2008) (citing *Monell*).

Far from showing that Officer Curdie's conduct was "representative of an official policy or custom of the institution," *Rost*, 511 F.3d at 1124, the parties' statements of material fact acknowledge that an internal investigation conducted by the Police Department concluded that under the Department's own policies, Officer Curdie's use of force was unreasonable, and he was given a letter of reprimand. (*See* Pltf's Mem. at 5 ¶ 24 & Exhibit "A"; Defs' Opp. Mem. at 4-5 ¶ 9.)

Absent some plausible factual basis for municipal liability under § 1983, Lund's claim against Salt Lake City must be dismissed.

Likewise, absent significant probative admissible evidence of the use of excessive force by defendants Foreman and Johnson, Lund's § 1983 claim against them must also be dismissed.

> To prevail on a claim for damages for a constitutional violation pursuant to 42 U.S.C. § 1983, a plaintiff must establish the defendant acted under color of state law and caused or contributed to the alleged violation. *Ruark v. Solano*, 928 F.2d

947, 950 (10th Cir.1991); *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990);
*Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  The plaintiff must
show the defendant personally participated in the alleged violation, *Bennet*, 545 at
1262-63, and conclusory allegations are not sufficient to state a constitutional
violation.  *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981).

*Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

The more difficult question is whether, taking plaintiff Lund's factual allegations as true,

defendant Curdie violated Lund's Fourth Amendment right to be free from unreasonable seizures

by using excessive force in taking Lund into custody.

**Plaintiff's Factual Allegations**

On November 25, 2006, plaintiff Miles Lund was visiting Liberty Park, a public park

located in downtown Salt Lake City, and feeding the ducks that gather on the large pond in the

southeast quadrant of the park.[3]  Responding to a report of a man with a gun at the park,[4] Officer

Curdie arrived, identified Lund as the suspected man with a gun, and approached Lund from

behind.  When Officer Curdie first saw Lund, he was facing away from Curdie and feeding the

ducks in the pond.  Curdie drew his firearm, pointed it at Lund and verbally ordered Lund to raise

his hands above his head.  Lund heard an officer say "Get your hands up or I'll shoot you,"

placed his left hand on his head, and told Officer Curdie that he was physically unable to raise his

right arm above his head.  Lund held his right arm away from his body, as high as shoulder level,

---

[3]Plaintiff's factual allegationa haver been gleaned largely from his summary judgment memoranda.  (*See* Pltf's Mem. at at 2-6 ¶¶ 1-33; Pltf's Opp. Mem. At 2-8.)

[4]According to the defendants, Lund had confronted a park user named Martin Stolz and his wife concerning their dog, who was off leash and chasing the ducks at the park.  Stolz claimed claimed that Lund showed him some kind of police badge and reached into his coat pocket for a gun, at which point Stolz fled the scene, shouting that Lund had a gun.  Stolz then called 911 and reported that "a guy pulled a gun on me," and gave a description of Lund and a black handgun.  (Defs' Mem. at 2-3 ¶¶ 3-8.)
No firearm was found in Lund's possession or at the scene, and none of the witnesses reported seeing Lund discard or dispose of a weapon after Stolz left the park.  It thus appears that Stolz' report that Lund threatened him with a black pistol was false.

but could not reach his head.  Officer Curdie ordered Lund to go into a kneeling position.  Again, Lund told Curdie that he was physically unable to get into a kneeling position.  Lund made no hostile or threatening movements or gestures while responding to Officer Curdie's commands, and was described by one witness as being very cooperative.

At the same time, Officers Max Nelson, Jeremy Crowther, Christopher Johnson and Jeremie Foreman had arrived at the scene, and Officers Nelson and Crowther drew their weapons and also held Lund at gunpoint.  Officer Nelson told Officer Curdie that he wanted to have Officer Crowther place Lund under arrest.  Disregarding this, Officer Curdie holstered his weapon, approached Lund from behind, pinned Lund's arms and shoulders in a "bear hug" embrace and knocked Lund to the ground.  Lund's head hit the ground, sustained an abrasion to his forehead and broke his glasses.  He was then handcuffed, lifted by the handcuffs, dragged across the sidewalk and placed roughly on a park bench.  He then fell off the bench to the ground, in extreme pain caused by the handcuffs forcing his immobile right shoulder into posterior extension.  (*See* Complaint, filed April 6, 2007 (dkt. no. 1), at 4 ¶¶ 20-27.)[5]

Lund was found to have no weapon of any kind on his person, and was subsequently released without charge.  He was subsequently diagnosed in March of 2007 as having a large intracranial hematoma that more likely than not was the result of his head striking the ground on November 25, 2006, and required surgical treatment.

---

[5] Lund's Complaint also alleges that while he was on the ground, one of the officers kicked him, but he does not now allege that Officer Curdie kicked him. Nor has he identified which officer did. Plaintiff's counsel argued that all three of the individual defendants should be held accountable under § 1983 for kicking Lund, citing *Summers v. Tice*, 33 Cal. 2d 80, 199 P.2d 1 (1948). In *Summers*, the plaintiff's eye was injured by a shotgun pellet and the two defendants had both fired shotguns in his direction. Thus, each defendant in *Summers* was a person who had carelessly fired a shotgun at the plaintiff. The *Summers* court ruled that each could be held liable, and shifted the burden of proof to the defendants to explain what happened. This court is familiar with the *Summers* principle, *see, e.g.*, *Allen v. United States*, 588 F. Supp. 247, 404-16 (D. Utah 1984), and concludes that Mr. Lund's case is not a *Summers* situation, *viz.*, Lund does not allege that all three officers kicked in his direction, but that only one struck him.

Following an administrative investigation, Captain Carroll Mays gave Officer Curdie a letter of reprimand sustaining an allegation of the use of "unreasonable force" in taking Lund into custody:

> It is my belief that had you utilized a tactical plan including the assistance of available officers on the scene, Mr. Lund most likely would have been taken into custody in a more controlled manner utilizing less force.  Mr. Lund was somewhat compliant and told you he could not raise his arms above his head and was unable to kneel down.  With this information and your observation of Mr. Lund's age, you should have modified your approach to taking him into custody.

(Letter to Officer Bryce Curdie, dated July 5, 2007, annexed as Exhibit A to ltf's Opp. Mem.)

Officer Curdie's summary judgment memoranda dispute Lund's narrative of the events of November 25th, alleging *inter alia* that Curdie told Lund that he was a police officer and that Lund was considered armed and dangerous; that Lund did not comply with his thrice-repeated order to face away from him, place his hands on the back of his head, interlock his fingers, and separate his feet, instead turning to face Curdie with both of his arms at his sides.  Not only did he fail to comply with his verbal commands, Officer Curdie asserts that Lund was moving his hands and shuffling his feet, and that he also reached for the waistband of his pants with his right hand, which Curdie interpreted as a "very, very threatening" movement.  Curdie asserts that he repeatedly ordered Lund to go to his knees or to lay prone on the ground, but that Lund refused to comply, saying that he was "crippled."  Yet Officer Curdie's observation of Lund gave "every indication that he [Lund] was able to perform the tasks that I was asking him to perform," and Lund did not appear to Curdie to have limited mobility or some kind of physical ailment.

Lund in turn disputes most of these assertions, denying that he reached for his waistband with his right hand, that he failed to raise his left hand when ordered, that he moved his hands or

shuffled his feet, or that he was specifically ordered to lay down on the ground.  Other witnesses

say that Lund had raised both his hands to at least shoulder level, that he did face away from

Officer Curdie as ordered, and that he was visibly handicapped and exhibited some difficulty in

moving.

Plaintiff's counsel argues that "[t]he facts about location of Mr. Lund's arms and hands,

visibility of his physical impairment, knowledge of his physical impairment, his attempts to

comply, his likelihood of flight, his likelihood of danger to others, the availability of other

officers to control the situation, the method and forcefulness with which Curdie took Lund to the

ground and the availability of alternative means of taking Mr. Lund into custody are disputed."

(Pltf's Opp. Mem. at 9.)  Indeed, as this court noted at the September 29th hearing,[6] the facts in

the November 25th narrative sequence that remain in dispute are the same facts that Officer

Curdie relies upon to justify his use of physical force in tackling Lund and forcing him to the

ground.[7]  The dispute as to those essential transactional facts must be resolved by the trier of fact

before we may determine whether Officer Curdie's use of force was unreasonable and excessive

---

[6]

THE COURT: I think that . . . the factual footing upon which – with which we're dealing has a series
of disputed facts that preclude me at least at this point from dealing with your motion in reference to
[Curdie].

(Transcript of Hearing, dated September 29, 2008, at 35:8-13.)

[7]Counsel argues that

[u]nquestionably, a reasonable officer in Officer Curdie's situation would have reasonably considered
Lund to be a threat to his safety and anyone else in the vicinity.  Lund refused to face away from
Officer Curdie, and would not comply with Officer Curdie's commands to place his hands on the back
of his head, go down to his knees, or lay down on the ground.  Of greatest concern was Lund's furtive
movement to his waistband, where he could have concealed a weapon, and his refusal to bring his right
hand away from his body.

(Defs' Mem. at 15.)

under those circumstances, applying Fourth Amendment standards.

Concerning Curdie's qualified immunity defense, this court concludes that when "[t]aken in the light most favorable to the party asserting the injury," the facts as alleged by Mr. Lund show that Officer Curdie violated Lund's Fourth Amendment right to be free from unreasonable seizures by using excessive force in taking Lund into custody on November 25, 2006. *See Hesse v. Town of Jackson*, 541 F.3d 1240, 1244 (10th Cir. 2008). In balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion, *see Scott*, 127 S. Ct. at 1778, the seriousness of the forceful intrusion upon Lund's interest in his own physical integrity and well-being through the use of force that caused him both immediate and serious physical injury outweighs the asserted governmental interest in immediately eliminating the perceived threat that Lund posed to the safety of Officer Curdie, other police officers at the scene, and other park users and passers-by.[8]

No one at the scene had observed Lund carrying, brandishing or threatening anyone with a firearm or other weapon in any fashion, and no weapon was found.[9]  Moreover, Officer Curdie

---

[8]According to the defendants, "Officer Curdie determined that it was imperative to take Lund into custody as soon as possible to remove any potential that Lund might pull a weapon from his waistband or some other place of concealment and engage in a gun fight in a well-used public park." (Defs' Mem. at 8 ¶ 41.)

[9]By itself, mere possession of a firearm in public is not unlawful and may well represent the exercise of a fundamental constitutional right guaranteed by the Second Amendment to the United States Constitution and Article I, § 6 of the Utah Constitution (recognizing the "individual right of the people to keep and bear arms for security and defense of self, family, others, property, or the state, as well as for other lawful purposes."). *See District of Columbia v. Heller*, 128 S. Ct. 2783, 2799 (2008) ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms."); *see also* Utah Code Ann. §§ 76-10-500 to 530 (2003 & Supp. 2008) (Utah Firearms Act). In Utah, the carrying of a *concealed* weapon on one's person in public is a matter of State licensing and regulation, and is routinely permitted pursuant to the applicable State statute. *See* Utah Code Ann. §§ 53-5-701 to 711 (Supp. 2008). The legislature has explicitly denied local governmental entities such as Salt Lake City the power to limit or restrict possession of a firearm on public property: "Unless specifically authorized by the Legislature by statute, a local authority or state entity

(continued...)

-14-

was not alone in facing the perceived threat of an unseen weapon.  Other officers were present at

the scene, two of whom were already holding Lund at gunpoint when Officer Curdie decided to

tackle him to the ground.  All of them were available to assist Curdie in taking Lund into

custody.  According to plaintiff Lund's factual allegations, here taken as true, Lund had complied

with Officer Curdie's commands as best he could, explained why he could not fully comply and

made no threatening movements or gestures towards Curdie or anyone else at the scene.  Lund

did not actively resist arrest; nor did he attempt to evade arrest by fleeing the scene.

By pointing their weapons at Lund, the officers made an immediate threat of use of

deadly force—which itself represents the use of force under the Fourth Amendment—in seizing

Lund and taking him into custody.   *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179,

1192 (10th Cir. 2001) ("The display of weapons, and the pointing of firearms at persons

inescapably involves the immediate threat of deadly force.  Such a show of force should be

predicated on at least a perceived risk on injury to the officers and others, based upon what the

officers know at that time.").  Officer Curdie decided to further escalate that use of force by

physically taking Lund down to the ground, based upon facts from which Curdie inferred an

---

[9](...continued)

may not enact, establish, or enforce any ordinance, regulation, rule, or policy pertaining to firearms that in any way
inhibits or restricts the possession or use of firearms on either public or private property."  Utah Code Ann. § 53-5a-102
(Supp. 2008); *see University of Utah v. Shurtleff*, 2006 UT 51, ¶ 11, 144 P.3d 1109, 1113 (observing that the enactment
of § 53-5a-102 in 2004 "dramatically altered the legal landscape, rendering it clear that Utah's firearms statutes are
universally applicable").  The legislature has authorized municipalities only to "regulate and prevent the discharge of
firearms, rockets, powder, fireworks or any other dangerous or combustible material."  Utah Code Ann. § 10-8-47 (2007).

    As articulated by the Utah Legislature, public policy in this State may fairly be read to condone and even
encourage gun ownership and the lawful possession and carrying of firearms in public places.  Salt Lake City's asserted
governmental interest in its police officers' response to a report of a "man with a gun" in a public park cannot be weighed
in isolation from this oft-emphasized public policy.  In that context, there may well be more individual constitutional
rights at stake than the Fourth Amendment freedom from unreasonable searches and seizures.

immediate risk of injury—factual allegations that Lund disputes.[10]  Based upon plaintiff Lund's version of the facts, and considering factors such as the severity of the alleged crime at issue, whether Lund posed an immediate threat to the safety of the officers and others, and whether Lund was actively resisting arrest or attempting to evade arrest by flight, Curdie's escalation of the use of force in taking Lund into custody was unreasonable and excessive.

Having decided the threshold qualified immunity question in favor of the plaintiff, the court must "'determine whether that right was clearly established at the time of the alleged violation.'" *Hesse*, 541 F.3d at 1244 (quoting *Conn v. Gabbert*, 528 U.S. 286, 290 (1999)); *see Eidson v. Owens*, 515 F.3d 1139, 1148 (10th Cir. 2008) (explaining that "our next step is to determine whether, in light of the specific context of this case, the constitutional prohibition was clearly established."  (citing *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007)).

As the Tenth Circuit has observed,

> The Fourth Amendment's guarantee that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" has been part of our Constitution since 1791.  The Fourth Amendment reasonableness standard "is 'clearly established' in the context of § 1983 actions" involving claims of excessive force. . . .  Indeed, "there is no doubt that *Graham v. Connor* . . . clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness."

*Holland*, 268 F.3d at 1195 (quoting *Saucier*, 533 U.S. at 201-02) (citations omitted).

The defendants argue that as of November 25, 2006, plaintiff Lund's Fourth Amendment right to be free from the use of  excessive force was not clearly established, at least in the particular context of this case: "There is no case law in the Tenth Circuit or anywhere else that

---

[10]Defense counsel acknowledged these disputes at the hearing.  (*See* Transcript of Hearing, dated September 29, 2008, at 17:17-24 (Mr. Robinson) ("that is in dispute from a number of different factual sources").)

would put Officer Curdie on notice that his split-second decision to take Lund to the ground

under the circumstances presented was clearly unlawful."  (Defs' Mem. at 18.)  Qualified

immunity, counsel insists, "protects 'all but the plainly incompetent or those who knowingly

violate the law,'" (*id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))), and "the contours of

Mr. Lund's Fourth Amendment rights in this situation were not clearly established."  (Transcript

of Hearing, dated September 29, 2008, at 13:11-12 (Mr. Robinson).)

Counsel cites to an unpublished disposition in *Chidester v. Utah County*, 268 Fed. Appx.

718 (10th Cir. March 6, 2008), as "very similar" to the case at bar, and as indicating that Lund's

Fourth Amendment right in this context was not clearly established in November of 2006.  In

*Chidester*, the plaintiff was a neighbor of a dwelling that became the target of a Utah County

Metro SWAT Team operation seeking to execute a no-knock search warrant and seize illegal

drugs and weapons on May 25, 2005 at about 10:30 p.m.  During that raid, one of the deputies

tackled and injured the plaintiff, who was observed standing outside his own home next door.

He had been awakened by the SWAT team's "flash-bang" grenades, and had come outside to see

what was happening.  One of the deputies pointed his weapon at the plaintiff and ordered him to

raise his hands in the air and to get down on the ground.  The plaintiff raised his hands, but had

difficulty getting down on the ground with his hands raised.  The deputy then tackled the

plaintiff, injuring him.  The *Chidester* panel agreed with the district court that the deputy had

used excessive force against the plaintiff, concluding that "viewed objectively, Deputy Parker's

tackling of Mr. Chidester was not reasonably necessary to protect his personal safety and

maintain the status quo.  It is an exceedingly close case."  268 Fed. Appx. at 727.  The deputy

was armed and "according to Mr. Chidester's version of the facts, faced with a compliant suspect

-17-

whose hands were above his head.  Under these facts," the panel concluded, "engaging Mr.

Chidester in such a physical manner was not reasonable."  *Id.*

Addressing the next step in the inquiry, the panel noted that "it is clearly established that

law enforcement officers may not point weapons at suspects that pose no threat," and that "a law

enforcement officer may not use force on a compliant suspect already under the officer's control

and not resisting detention or trying to flee."  *Id.* at 728-29 (citing *Holland*, 268 F.3d at 1192, and

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314-15 (10th Cir. 2002)).  But the panel

distinguished Chidester's case from the prior cases:

> Chidester was an unknown adult male encountered at night near the target
> residence during a SWAT raid where weapons were expected to be encountered.
> While he complied with Deputy Parker's directions to place his hands above his
> head, he did not comply with his demand to get on the ground, regardless of how
> difficult it may have been to accomplish such a feat or how unreasonable a
> command it was under the circumstances. Mr. Chidester's sudden appearance and
> failure to get on the ground occurred when Deputy Parker was rushing toward the
> target house and then at Mr. Chidester in what became a rapidly evolving situation
> where he had little time to ascertain Mr. Chidester's identity and whether he was a
> threat. While we have determined it was objectively unreasonable for Deputy
> Parker to tackle Mr. Chidester given Deputy Parker already had a weapon aimed
> at him, we note the extreme exigency of the situation. The situation is unlike other
> cases where the suspect person was already identified and then under the officer's
> total physical control for the purpose of preventing him or her from fleeing, using
> a weapon, or otherwise becoming a threat.

*Id.* at 729.  The panel concluded that "we cannot say it was unreasonable for Deputy Parker to

mistakenly believe the law allowed a greater level of force for the purpose of obtaining the

requisite safety needed during the exigent circumstance presented," namely an on-going SWAT

Team raid on a dwelling believed to contain illegal drugs and weapons—the split-second timing

of which had already faltered—and that "Deputy Parker is entitled to qualified immunity because

his conduct fell within the haze that enshrouds the border between excessive and acceptable force

in this case."  *Id.* at 729, 730.

Defendants argue that *Chidester* is "very similar" to this case—indeed, that "the decision

to use force in the Chidester case is, in fact, more egregious than the situation we have at hand

today," (Transcript of Hearing, dated September 29, 2008, at 17:7-10 (Mr. Robinson))—and that

the *Chidester* panel found that Fourth Amendment rights were not clearly established "in a

situation like this."  (*Id.* at 16:1-6 (Mr. Robinson).)

> As the Tenth Circuit recently explained,
>
> The pertinent question "is whether it would be clear to a reasonable officer that
> his conduct was unlawful in the situation."  *Id.* (quotation omitted). This means
> that "there must be a Supreme Court or Tenth Circuit decision on point, or the
> clearly established weight of authority from other courts must have found the law
> to be as the plaintiff maintains."  *Id.* at 1114-15 (quotation omitted).

*Eidson*, 515 F.3d at 1148 (quoting *Cortez*, 478 F.3d at 1114-15).  "While the facts of the cases

compared need not be identical, they must be sufficiently analogous to satisfy the particularized

context necessary to support liability." *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007)

(citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

Factual similarities prove helpful in making this determination, but "officials can still be

on notice that their conduct violates established law even in novel factual circumstances." *Hope

v. Pelzer,* 536 U.S. at 741.  In *Hope*, the Court expressly rejected any requirement that previous

cases be "fundamentally similar" or have "materially similar" facts.  *Id.*[11]  Instead, an officer is

"entitled to 'fair warning' that his conduct deprived his victim of a constitutional right."  *Id.* at

740-41.  There may be "notable factual distinctions between the precedents relied on and the

---

[11]"Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a
conclusion that the law is clearly established, they are not necessary to such a finding." *Id.*

cases then before the Court," but "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights," those rights are "'clearly established' in civil litigation under § 1983." *Id.* at 740.  "The salient question . . . is whether the state of the law in [2007] gave respondents fair warning that their alleged treatment of [Lund] was unconstitutional." *Id.* at 741.

Here, the situation on November 25, 2006 involving Mr. Lund lacks much of the "extreme exigency" that concerned the *Chidester* panel in dealing with an on-going night-time SWAT team assault on a residence that had already gone somewhat awry.  Plaintiff Chidester was forcibly taken to the ground by an officer after he failed to lie down as ordered, but in contrast to Mr. Lund's case, was not already being held at gunpoint by two other officers when Deputy Parker tackled him.  Here there was no SWAT team operation, no "no-knock" warrant, no structure believed to house illegal drugs and weapons, and no unknown number of suspects. Mr. Lund did not stumble into the midst of a night-time SWAT team assault; he was first observed by Officer Curdie simply standing in the open at a public park in the afternoon with a friend, feeding ducks.

The *Chidester* panel noted that "a law enforcement officer may not use force on a compliant suspect already under the officer's control and not resisting detention or trying to flee," citing to *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314-15 (10th Cir. 2002).[12]  Here there is no suggestion that Lund resisted arrest or attempted to flee the scene, and at the time he was taken

---

[12]In *Olsen*, the plaintiff alleged that in the process of taking the plaintiff into custody and handcuffing him in a retail shopping mall on suspicion of unauthorized use of a credit card, the arresting officer pushed the plaintiff "at least 10 feet into a store window to effectuate the arrest" and "cocked [his arm] at an angle, . . . clear up the middle of [his] back," causing him considerable discomfort, despite the fact that plaintiff had passively cooperated with his arrest–at least according to the plaintiff's version of the facts.  312 F.3d at 1315 (internal quotation omitted).

down to the ground by Officer Curdie, he was being held at gunpoint by two other officers, and

arguably was under their control by reason of the immediate threat of deadly force.[13]  This court

is satisfied that the prior cases cited by the *Chidester* panel gave Officer Curdie fair warning that

his treatment of Lund—according to Lund's version of the disputed facts—would violate Lund's

Fourth Amendment right.  That right to be free from the use of excessive force under those

circumstances was thus "clearly established" for purposes of Curdie's qualified immunity

defense.   As to Officer Curdie, resolution of the disputed issues of fact surrounding the events of

November 25, 2006, the ultimate question of the Fourth Amendment reasonableness of his

conduct in taking Mr. Lund into custody, and his potential liability for damages under § 1983

must await a trial on the merits.

**Plaintiff's State Law Claims**

In addition to his § 1983 claims, plaintiff Lund also pleaded a Third Cuase of Action

against the individual defendants for negligence, and a Fourth Cause of Action against Salt Lake

City for negligent supervision of the officers involved in taking Lund into custody on November

25, 2006.  (*See* Complaint, filed April 6, 2007 (dkt. no. 1), at 9-10 ¶¶ 56-62.).  The defendants

moved for summary judgment on these state law claims, asserting that Lund had failed to comply

with the strict requirements of the Governmental Immunity Act of Utah, Utah Code Ann. §§

63G-7-101 *et seq.* (2008) (formerly Utah Code Ann. §§ 63-30d-101 *et seq.*).  In his response

memorandum, plaintiff Lund effectively abandoned his Third Cause of Action.  (*See* Pltf's Opp.

Mem. at 15.)  At the same time, he indicated that he wished to pursue his Fourth Cause of Action

---

[13]This is not a case where a plaintiff, though clearly able to do so, refused to comply with an officer's lawful commands for nearly an hour while remaining inside a vehicle beyond the officer's effective physical control.  *Cf. Mecham*, 500 F.3d at 1202-03.  To his credit, Officer Curdie did not use pepper spray on Mr. Lund.  *Cf. id.*

against Salt Lake City.

This court having granted summary judgment dismissing Lund's § 1983 claim against Salt Lake City, there remains no federal cause of action pending against the city in this case, and thus there exists no independent basis for the exercise of federal jurisdiction over the city.  Given that the resolution of the plaintiff's claim and the defendant's motion requires the determination of issues exclusively involving State law (including the relatively recent version of Utah's governmental immunity legislation), this court declines to exercise supplemental jurisdiction over Lund's Fourth Cause of Action under 28 U.S.C. § 1367, and for that reason, the Fourth Cause of Action will be dismissed *without* prejudice.  *See* 28 U.S.C. § 1367(c)(3) (2006) (providing that the "district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). Here, considerations of "'judicial economy, convenience, and fairness' " do not favor "'retaining jurisdiction.'"  *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995) (quoting *Thatcher Enter. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990)); *cf. Bauchman v. West High School*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))..

Mr. Lund may pursue his negligence claim under State law in a proper State forum.

**CONCLUSION**

The Tenth Circuit has made it clear that it "will not approve summary judgment in excessive force cases—based on qualified immunity or otherwise—if the moving party has not

quieted all disputed issues of material fact." *Olsen*, 312 F.3d at 1314 (citing *Allen v. Muskogee*, 119 F.3d 837, 840-842 (10th Cir. 1997). In *Zuchel v. Spinharney*, 890 F.2d 273 (10th Cir. 1989)). To defeat summary judgment, such factual disputes must bear upon the underlying events, and not solely the question of the reasonableness of the officers' conduct. *See Mecham v. Frazier*, 500 F.3d 1200, 1203-04 (10th Cir. 2007).

Here, defendants Foreman, Johnson and Salt Lake City succeeded in quieting all such issues and in showing that plaintiff Lund has failed to allege facts sufficient to show that they violated his Fourth Amendment rights. Defendant Curdie, on the other hand, failed to quiet the disputed issues of material fact, instead conceding at the hearing that those disputed issues persist. At crucial points, "neither party's asserted material facts jibe with those of the other," *Olsen*, 312 F.3d at 1315, and summary judgment in favor of Officer Curdie on plaintiff Lund's § 1983 claim must be denied. Defendants Foreman, Johnson and Salt Lake City having demonstrated that there exists no genuine issue of material fact and that these defendants are entitled to judgment as a matter of law, the defendants' motion for summary judgment on plaintiff Lund's § 1983 claim should be GRANTED to that extent.

Therefore,

**IT IS ORDERED** that the defendants' motion for summary judgment (dkt. no. 41) is GRANTED IN PART as to defendants Foreman, Johnson and Salt Lake City, and plaintiff's § 1983 claim against them shall be DISMISSED WITH PREJUDICE;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment is DENIED IN PART as to defendant Curdie, and the matter will be calendared for a Pretrial Conference;

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment (dkt. no. 30) is DENIED;

**IT IS FURTHER ORDERED** that plaintiff's Third Cause of Action is hereby DISMISSED;

**IT IS FURTHER ORDERED** that the court declines to exercise supplemental jurisdiction over plaintiff's Fourth Cause of Action against defendant Salt Lake City, and the same is hereby DISMISSED WITHOUT PREJUDICE. *See* 28 U.S.C. § 1367(c)(3; and

**IT IS FURTHER ORDERED** that the hearing on settlement of form of order currently calendared for December 5, 2008 at 1:30 p.m. is hereby VACATED.

DATED this __4th__ day of December, 2008.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

-24-